# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN S. GEIGER,<br><br>            Petitioner,<br><br>     v.<br><br>NEIL H. ADLER, Warden,<br><br>            Respondent. | 1:10-cv-00715-AWI-JLT HC<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITIONER'S MOTION FOR SUMMARY JUDGMENT (Doc. 23)<br><br>ORDER REQUIRING OBJECTIONS TO BE FILED WITHIN TWENTY DAYS |

Petitioner is a federal prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**PROCEDURAL HISTORY**

Petitioner filed the instant petition on April 22, 2010, alleging that the United States Bureau of Prisons ("BOP") has "unlawfully, capriciously, arbitrarily, in abuse of discretion, and in violation of statutory and decisional proscription, failed and refused to properly entertain and grant Geiger's timely made request for transfer to a Residential Re-entry Center ("RRC") to serve the remainder of his sentence pursuant to 18 U.S.C. § 3621(b)." (Doc. 1, p. 3). The petition further alleges that Petitioner's request for RRC placement was denied using three improper bases: (1) the application of a "categorical temporal limitation," i.e., that Petitioner's request was made too early in his sentence; (2) the imposition of "punitive servitude," i.e., denying Petitioner's RRC placement based on

1  Petitioner's value and utility to the institution; and (3) failure to "substantively consider any of the
2  mandatory 'individualized' factors required by 18 U.S.C. § 3621(b)," federal case law, and
3  Respondent's own policy statements and guidelines. (Doc. 1, p. 3).

4  On May 7, 2010, the Court ordered Respondent to file a response to the petition. (Doc. 5).
5  On July 2, 2010, Respondent filed the Answer, contending that the Court lacks jurisdiction because
6  Petitioner is not challenging the fact or duration of his confinement, that Petitioner received the
7  individualized consideration required under federal law, and that Petitioner's allegations of
8  retaliation are not exhausted. (Doc. 14). On August 4, 2010, Petitioner filed the Traverse. (Doc.
9  19). Subsequently, on May 27, 2011, Petitioner filed a motion for summary judgment, contending
10  that Respondent, in the Answer, had not "denied any of the relevant factual allegations, except to
11  argue that Geiger's transfer to the deep freezer was not based upon retaliatory intent." (Doc. 23, p.
12  3). Petitioner argues that the "material facts in this matter are undisputed" and that Petitioner is
13  entitled to judgment and relief thereon. (Id.).

## FACTUAL HISTORY

15  Petitioner is in the custody of the BOP serving a 108 month prison sentence at the Auxiliary
16  Camp at the Taft Correction Institution ("TCI"), in Taft, California, for his 2004 conviction in the
17  United States District Court for the Eastern District of Tennessee for violations of 18 U.S.C. § 1343
18  (wire fraud); 18 U.S.C. § 1954 (graft); 18 U.S.C. § 1956(h)(conspiracy to commit money laundering;
19  and 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specific unlawful
20  activity). (Doc. 14, Ex. 1). Petitioner was ordered to pay restitution in the amount of $6,700,000.
21  (Id., p. 9). Petitioner's scheduled release date is June 17, 2012. (Doc. 1, p. 13).

## DISCUSSION

A.  Statutory and Regulatory Background.

24  The BOP has the authority, under 18 U.S.C. § 3621(b), to designate the location of an
25  inmate's imprisonment. The BOP's policy prior to December 13, 2002, was to exercise its discretion
26  in allowing prisoners to serve part of all of their imprisonment in an RRC. See Rodriguez v. Smith,
27  541 F.3d 1180, 1182 (9th Cir. 2008). The Department of Justice Office of Legal Counsel ended that
28  practice by issuing a legal opinion that § 3621(b) did not authorize inmate placements in an RRC for

an entire term because it did not constitute imprisonment.  See id.

The BOP changed its policy on December 20, 2002, by limiting an inmate's eligibility for placement in an RRC to six months or to the final ten percent of his sentence, whichever was shorter. See Rodriguez, 541 F.3d at 1182.  The First and Eighth Circuits invalidated that policy because it failed to recognize the BOP's discretion to transfer an inmate to an RRC at any time, as provided in 3621.  See id. at 1182-1183.  In response, the BOP decided to "exercise its discretion categorically to limit inmate's community confinement to the last ten percent of the prison sentence being served, not to exceed six months."  See id. at 1183 (quoting 69 Fed. Reg. 51213).  These rules were published at 28 C.F.R. §§ 570.20 and 570.21, and became effective on February 14, 2005.  See id.

On April 9, 2008, the President signed into law the "Second Chance Act," a bill which amends the text of 18 U.S.C. § 3624(c).  The updated text of § 3624(c)(1) authorizes the BOP to consider placing inmates in RRCs for up to the final twelve months of their sentences, rather than the final six months.  Section 3624(c)(4) also clarifies that nothing in § 3624 "shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under § 3621."  18 U.S.C. § 3624(c)(4).

On April 14, 2008, in response to the new legislation, the BOP issued a memorandum for Chief Executive Officers regarding "Pre-Release Residential Reentry Center Placements Following the Second Chance Act of 2007."  (Doc. 12, Ex. 2).  This memorandum serves as the BOP's new interim policy and it explicitly rescinds 28 C.F.R. §§ 570.20 and 570.21, the regulations which Petitioner claims improperly restricted the BOP's discretion to place him at an RRC for more than six months.

Under the new policy, inmates are to be "individually considered for pre-release RRC placement using the following five factor criteria from 18 U.S.C. 3621(b), which are as follows:

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence
    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). The memorandum further provides that the BOP must review inmates for pre-release placement seventeen to nineteen months before their projected release date. (Doc. 12, Ex. 2, p. 3).

On September 4, 2008, the Ninth Circuit decided <u>Rodriguez</u>, holding that 28 C.F.R. §§ 570.20 and 570.21 were invalid because they conflicted with the Congressional intent of § 3621(b) that inmates be considered for placement in or transfer to an RRC based on the five factors contained in § 3621(b). See <u>Rodriguez</u>, 541 F.3d at 1187. The BOP therefore could not reference 28 C.F.R. §§ 570.20 and 570.21 in considering an inmate for RRC placement. Thus, under <u>Rodriguez</u>, the BOP has discretion to transfer an inmate to an RRC at any time. However, <u>Rodriguez</u> does not require the BOP, once it applies the factors of § 3621(b), to grant an inmate's request for immediate transfer to an RRC, nor does it require the BOP to afford an inmate any particular length of RRC placement. <u>See</u> <u>Berry v. Sanders</u>, 2009 WL 789890, at *6-*7 (C.D. Cal. March 20, 2009); <u>Guss v. Sanders</u>, 2009 WL 5196153, *4 (C.D. Cal. Dec. 29, 2009).

Then, on November 14, 2008, the BOP, in a memorandum from the Assistant Director and General Counsel of the BOP entitled "Inmate Requests for Transfer to Residential Reentry Centers," issued guidance to staff for considering and responding to inmate requests for routine transfer to RRC's. (Doc. 12, Ex. 3). When considering a transfer, "prior to the pre-release time frame of 12-months from release, staff must individually consider the request, just as they would any other request for lower security transfer." (<u>Id</u>., p. 2). In rendering its decision, staff must utilize the five factors outlined in § 3621(b), and staff "cannot, therefore, automatically deny an inmate's request for transfer to an RRC. Rather, inmate requests for RRC placement must receive individualized consideration." (<u>Id</u>.) The BOP may initiate such transfer at any time, and if an inmate requests a transfer prior to the pre-release transfer time-frame, the review will occur "in conjunction with the [inmate's] next scheduled Program Review." (<u>Id</u>.). However, as with the April 14 Memorandum, the November 14 Memorandum advises BOP staff that "a RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs."

Section 17541 of 42 U.S.C., also created by the SCA, provides, inter alia, that the Attorney

General and the Director of BOP "shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:

> (1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons–
>
>> (A) assess each prisoner's skill level (including academic, vocational, health, cognitive, interpersonal, daily living, and related reentry skills) at the beginning of the term of imprisonment of that prisoner to identify any areas in need of improvement prior to reentry;
>>
>> (B) generate a skills development plan for each prisoner to monitor skills enhancement and reentry readiness throughout incarceration;
>>
>> ( C) determine program assignments for prisoners based on the areas of need identified through the assessment described in subparagraph (A);
>>
>> (D) ensure that priority is given to the reentry needs of high-risk populations, such as sex offenders, career criminals, and prisoners with mental health problems;
>>
>> (E) coordinate and collaborate with other Federal agencies and with State, Tribal, and local criminal justice agencies, community-based organizations, and faith-based organizations to help effectuate a seamless reintegration of prisoners into communities;
>>
>> (F) collect information about a prisoner's family relationships, parental responsibilities, and contacts with children to help prisoners maintain important familial relationships and support systems during incarceration and after release from custody; and
>>
>> (G) provide incentives for prisoner participation in skills development programs.
>
> (2) Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include–
>
>> (A) the maximum allowable period in a community confinement facility;
>>
>> (B) such other incentives as the Director considers appropriate (not including a reduction of the term of imprisonment).

42 U.S.C. § 17541(1), (2).

    B. <u>Ninth Circuit Cases Interpreting The Statutory And Regulatory Framework</u>.

After the passage of the SCA, various legal challenges were raised against the SCA and, more specifically, against the BOP's implementation of the SCA through its two memoranda. The most prevalent challenge has been to the BOP's statement, in both memoranda, that most inmates' rehabilitation needs can be met with RRC placements that do not exceed six months and that any placement exceeding that limit requires the approval of the Regional Director of the BOP. These

legal challenges were resolved in Sacora v. Thomas, 628 F.3d 1059 (9th Cir. 2010), decided after the briefs were submitted in this matter. In Sacora, the Ninth Circuit upheld the BOP's policies as legal and constitutional implementations of the changes required by the SCA. Specifically, the Ninth Circuit held that the BOP's policies, as expressed in its two memoranda and subsequent program statements, reasonably implemented the changes in the SCA, that the BOP's policies were not arbitrary and capricious, and that the policies were not substantive rules subject to the Administrative Procedure Act's notice-and-comment requirements. Id. at 1066-1070.

Subsequent to Sacora, the Ninth Circuit, on March 3, 2011, decided Reeb v. Thomas, 636 F.3d 1224 (9th Cir. 2011). In Reeb, the Ninth Circuit addressed a petitioner's contention that BOP had wrongfully expelled him from a prison drug treatment program, the Residential Drug Abuse Program ("RDAP"), authorized by 18 U.S.C. § 3621(e). The appeals court prefaced its ruling by explaining the role of the Administrative Procedure Act ("APA") vis-a-vis claims by federal inmates:

> The APA provides a cause of action for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702, but withdraws that cause of action to the extent that the relevant statute "preclude[s] judicial review" or the "agency action is committed to the agency discretion by law," id. § 701(a)....[Under the APA] [a]gency actions can be held unlawful when they are "arbitrary, capricious, an abuse of discretion , or otherwise not in accordance with law." 5 U.S.C. § 702(2)(A).

Reeb, 636 F.3d at 1226.

The Ninth Circuit then focused on 18 U.S.C. § 3625, entitled "Inapplicability of the Administrative Procedure Act," that provides that "[t]he provisions of sections 554 and 555 and 701 through 706 of [the APA] do not apply to the making of any determination, decision, or order under [18 U.S.C. §§ 3621-3625]." Reeb, 636 F.3d at 1226. In concluding that it lacked jurisdiction to consider the petitioner's claim, the Ninth Circuit reasoned as follows:

> There is no ambiguity in the meaning of 18 U.S.C. § 3625. The plain language of this statute specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701-706, do not apply to "any determination, decision, or order" made pursuant to 18 U.S.C. §§ 3621-3625. The BOP has authority to manage inmate drug treatment programs, including RDAP, by virtue of 18 U.S.C. § 3621. To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625. Accordingly, any substantive decision by the BOP to admit a particular prisoner to RDAP, or to grant or deny a sentence reduction for completion of the program, is not reviewable by the district court. The BOP's substantive decisions to remove particular inmates form the RDAP program are likewise not subject to judicial review.

Reeb, 636 F.3d at 1227.  The Court went on to explain as follows:

> Accordingly, we hold that federal courts lack jurisdiction to review the BOP's individualized RDAP determinations made pursuant to 18 U.S.C. § 3621, such as Reeb's claim herein. Although judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority, Reeb's habeas petition alleges only that the BOP erred in his particular case. Because the district court lacked jurisdiction to adjudicate the merits of Reeb's habeas petition, we vacate its judgment and remand with instructions to dismiss for lack of jurisdiction.

Id. at 1228-1229.

### C. The Court Lacks Jurisdiction To Address The Merits of BOP's § 3621(b) Determination.

The gravamen of Petitioner's claim is that Respondent has failed to provide Petitioner with the individualized consideration of RRC placement required by federal law.  Specifically, Petitioner notes at least seven instances between January 27, 2009, and January 25, 2010, where Petitioner made either formal or informal requests for either direct placement in an RRC or a reduction in his security level to allow him to be placed in an RRC.  (Doc. 1, pp. 25-26; 31; 42-45).  Petitioner alleges that all of Respondent's denials of Petitioner's requests were predicated on one or more of three different, and invalid, bases: (1) summary denials based on the length of time remaining in Petitioner's sentence; (2) denials based in part on Petitioner's usefulness to the prison; and (3) denials that consistently fail to employ the criteria set forth in 18 U.S.C. § 3621(b).  (Doc. 1, p. 3).

The Court, in its May 7, 2010 order requiring Respondent to file a response, made a preliminary finding of jurisdiction based on the state of the law at the time the order was issued. (Doc. 5).  The Court explained that a writ of habeas corpus relief extends to a person in custody under the authority of the United States.  See 28 U.S.C. § 2241.  While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  See, e.g., Rodriguez, 541 F.3d 1180 (affirming grant of habeas relief where petitioner brought a § 2241 petition to compel the BOP to immediately consider transferring him to an RRC); Montano-Figueroa v. Crabtree, 162 F.3d 548, 549 (9th Cir. 1998)(allowing a federal prisoner to use § 2241 to challenge the BOP's restitution policies).

1  The Court also noted that, unlike § 2255, § 2241 does not contain language limiting
2  jurisdiction under § 2241 to petitioners who are "claiming the right to be released." 28 U.S.C. §
3  2255; compare United States v. Thiele, 314 F.3d 399, 401 (9th Cir. 2002)(challenge to restitution
4  order not cognizable under § 2255 because petitioner was not claiming right to be released) with
5  Montano-Figueroa, 162 F.3d at 549 (challenge to timing and amount fine payments cognizable under
6  § 2241's execution clause). Accordingly, § 2241 may be used to challenge the execution of a
7  prisoner's sentence, even where the prisoner does not seek release or to shorten the duration of his
8  confinement. See, e.g., Rodriguez, 541 F.3d at 1182; Montez v. McKinna, 208 F.3d 862, 865 (10th
9  Cir. 2000)(entertaining petitioner's challenge to his transfer to a private prison as a challenge to the
10 execution of his sentence pursuant to § 2241); see also Montano-Figueroa, 162 F.3d at 549 (reaching
11 the merits of petitioner's § 2241 challenge to the amount and timing of fine payments); United States
12 v. Lemoine, 546 F.3d 1042, 1046 (9th cir. 2008)(entertaining § 2241 challenge to restitution
13 schedule); United States v. Giddings, 740 F.2d 770, 772 (9th Cir. 1984)("Review of the execution of
14 a sentence may be had through petition for writ of habeas corpus under 28 U.S.C. § 2241.").

15  However, to this litany of cases on federal jurisdiction, the Court must now add Reeb, a case
16 decided long after the briefing in this case had concluded. As discussed, Reeb construed 18 U.S.C. §
17 3625, which provides that, inter alia, any claims raised under 18 U.S.C. § 3621 are not entitled to
18 judicial review. Though Reeb considered the BOP's individualized decision denying an inmate's
19 placement in a residential drug abuse program, citing Reeb, district courts have uniformly found that
20 no habeas review of RRC placement decisions by the BOP, is permitted. See, e.g., Binford v.
21 Thomas, 2011 WL 1791198 (D.Or. May 10, 2011)(§3625 precludes judicial review of RRC
22 placement under § 3621(b), citing Reeb); Espinosa v. Rios, 2011 WL 4084365 (E.D. Cal. Sept. 13,
23 2011)(same); Han v. Benov, 2011 WL 4084185 (E.D. Cal. Sept. 13, 2011)(same); Ingram v.
24 Thomas, 2011 WL 1791234 (D.Or. May 10, 2011); Spears v. Rios, 2011 WL 4055247 (E.D. Cal.
25 Sept. 12, 2011)(same); Gary v. Rios, 2011 WL 4055292 (E.D. Cal. Sept. 12, 2011)(same); Brown v.
26 Sanders, 2011 WL 4899919 (C.D. Cal. Sept. 1, 2011)(same); Cheung v. Tews, 2011 WL 4529672
27 (N.D. Cal. Sept. 29, 2011)(same); Pua v. Tews, 2011 WL 4529735 (N.D. Cal. Sept. 29, 2011)(same);
28 Tekle v. Washington-Adduci, 2011 WL 4802433 (C.D. Cal. Aug. 24, 2011)(same).

1 The rationale for extending Reeb to the context of RRC placements is simple. Like the
2 RDAP program the BOP administers under § 3621(e), the BOP in this case has the sole authority to
3 make RRC placement determinations under § 3621(b). And, like the RDAP determination in Reeb,
4 the BOP's decision to deny a petitioner's request for RRC placement is a substantive, discretionary
5 determination by the BOP pursuant to the authority set forth in § 3621(b). The language of § 3625
6 contains no ambiguity; rather, it clearly forecloses judicial review of "any determination, decision, or
7 order made pursuant to 18 U.S.C. 3621-3624." Reeb, 636 F.3d at 1227. Accordingly, the BOP's
8 substantive, discretionary RRC decision adverse to Petitioner is not reviewable in the district court
9 pursuant to § 706(2)(A) of the APA. Reeb, 636 F.3d at 1227; see, e.g., Binford, 2011 WL 1791198;
10 Espinosa, 2011 WL 408436. Han, 2011 WL 4084185; Ingram, 2011 WL 1791234; Spears, 2011 WL
11 4055247; Gary, 2011 WL 405529; Brown, 2011 WL 489991 Cheung, 2011 WL 4529672.

12 The petition cannot be fairly read to challenge anything other than the particularized and
13 individualized determination regarding RRC placement of this particular petitioner, judicial review
14 of which is foreclosed by Reeb. However, to the extent that the petition could be construed to
15 contend that the BOP's policies and program statements are inconsistent with the SCA, such claims
16 have already been rejected by the Ninth Circuit. Sacora, 628 F.3d at 1066-1070. Accordingly, the
17 petition must be denied.

18      D.  Retaliation.

19 In addition to the "offending conduct" that forms the gravamen of this petition, the petition
20 also contains four separate sections that make the following allegations: (1) Respondent is not
21 entitled to deference because of its "total disregard" for its statutory and regulatory duties; (2)
22 empirical data shows Respondent has a bias against RRC transfers; (3) the 2008 changes in BOP's
23 procedures does not moot the petition; and (4) Respondent has engaged in retaliating against
24 Petitioner for seeking RRC placement. (Doc. 1, p. 7).

25 While it is clear from reading the petition that these four contentions provide merely legal
26 context to Petitioner's sole legal claim, i.e., that BOP failed to follow federal law in making his
27 individualized determination regarding RRC placement, both the Answer and the Traverse appear to
28 view the retaliation claim as a separate and distinct legal claim within this habeas proceeding. The

Answer devotes an entire section to refuting the merits of Petitioner's retaliation claim, going so far as to argue it is unexhausted. (Doc. 12, p. 10-11). In support of this position, Respondent submits the Declaration of Dale Patrick, the sole purpose of which is, apparently, to establish that Petitioner was not subjected to retaliation, but, instead, was transferred to a different prison job assignment based on a policy of rotating inmates into different job assignments after twelve months in order to discourage "over-familiarity with staff." (Doc. 14, Ex. 2, p. 2). The Traverse then spends several pages rebutting both the exhaustion claim and Respondent's position on the merits of the retaliation contention. (Doc. 19, pp. 9-11).

In the Court's view, by focusing on the issue of retaliation in these habeas proceedings, both sides have lost sight of the issue that is presently before the Court, i.e., whether BOP followed federal law in rejecting Petitioner's request for RRC placement. That is the only ground for relief in the petition and RRC placement is the only relief requested by Petitioner. Accordingly, there is no need for this Court to address the issue further.[1] Similarly, the other three subsections mentioned above do not set forth separate habeas claims that this Court must address in these Findings and Recommendations.

E.  Petitioner's Motion For Summary Judgment.

As mentioned, subsequent to the filing of the Traverse, Petitioner filed a motion for summary judgment, contending that the factual issues were not in dispute and that Petitioner was entitled to judgment as a matter of law. (Doc. 23). For the same reason that the Court is precluded from judicial review of Petitioner's habeas claim on the merits, the Court is precluded from addressing that same claim in the context of a motion for summary judgment. The clear wording of 18 U.S.C. § 3625 precludes judicial review of a discretionary decision by BOP under 18 U.S.C. § 3621. Reeb, 636 F.3d at 1227. Reeb cannot be read to preclude judicial review of an RRC determination in a

---

[1] However, even if this issue was ripe for decision, the Court would be hard-pressed to find wrongdoing based on Petitioner's self-serving declaration and his flawed logic. Petitioner's assumption that because his job transfer occurred after his repeated requests for RRC placement means that the job transfer was *caused* by his repeated RRC placement requests–via retaliation–commits the fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this." Apart from Petitioner's own assumptions, there is nothing in this record to support such a causal relationship. Indeed, the prison's actions are more than adequately explained by the Declaration of Dale Patrick, which asserts that Petitioner's job transfer was part of a routine, albeit informal, prison policy of rotating job assignments among inmates to prevent over-familiarity with staff.

merits decision, but <u>not</u> to preclude judicial review when the Court addresses the same issue in a summary judgment motion. That being the case, judicial review of the Petitioner's claim on summary judgment is unavailable. <u>Id</u>.

However, even were that not so, the Court would find the motion for summary judgment both unnecessary and redundant to the merits decision it must ultimately issue. The Court the Rules Governing Section 2254 Cases do not expressly provide for any motion practice; rather, such motion practice must be inferred from the structure of the rules themselves. <u>Hillery</u>, 533 F.Supp. at 1195. For example, Rule 11 provides as follows:

> The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, <u>may</u> be applied to a proceeding under these rules.

Rule 11 of the Rules Governing Section 2254 Cases. (Emphasis supplied). Because of the peculiar and unique nature of habeas proceedings, as a general rule, neither Rule 12(b)(6) nor summary judgment motions under Rule 56 are particularly appropriate. Given the nature of a habeas corpus petition, <u>Anderson v. Butler</u>, 886 F.2d 111, 113 (5th Cir. 1989) (modern habeas corpus procedure has the same function as an ordinary appeal); <u>O'Neal v. McAnnich</u>, 513 U.S. 440, 442, 115 S.Ct. 992 (1995) (federal court's function in habeas corpus proceedings is to "review errors in state criminal trials"(emphasis omitted)), motions for summary judgment are unnecessary because petitions may be decided immediately by the Court following submission of the pleadings provided no material issues of fact exist. <u>See</u>, 1 J. Liebman, *Federal Habeas Corpus Practice and Procedure,* § 17.3 (1988) (The habeas corpus statute authorizes–indeed, it seems to *require*–the court treat the petition itself as the equivalent of a petitioner-initiated summary judgment motion).

Put simply, except for the unusual circumstance where an evidentiary hearing is held and findings of fact must be made by the Court, all habeas proceedings are submitted to the district court on the papers filed or lodged with the Court, the relevant facts of the habeas claims are uncontroverted, and the Court decides the case and issues a merits decision as a matter of law. In other words, a summary judgment motion, alleging the absence of any controverted issues of material fact and entitlement to judgment as a matter of law, is both unnecessary and redundant in the habeas context.

**RECOMMENDATION**

For the foregoing reasons, the Court RECOMMENDS as follows:

1. The petition for writ of habeas corpus (Doc. 1), be DENIED for lack of jurisdiction; and,

2. Petitioner's motion for summary judgment (Doc. 23), be DENIED for lack of jurisdiction.

This Findings and Recommendations is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy of this Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 7, 2011**                                   **/s/ Jennifer L. Thurston**
                                                               UNITED STATES MAGISTRATE JUDGE